UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PENN-STAR INSURANCE COMPANY,<br>                                    Plaintiff,<br><br>                        -v-<br><br>LORING PLACE REALTY LLC, *et al.*,<br>                                    Defendants. | 22-CV-1154 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

This case involves an insurance dispute arising out of a personal injury action brought by an employee who was injured while installing internet service at a site in the Bronx.  Third-Party Plaintiff Loring Place Realty LLC ("Loring") owns the property where the employee was injured and is listed as an additional insured party on a policy issued to the internet service company by Third-Party Defendant The Phoenix Insurance Company ("Phoenix").  Loring and Phoenix disagree on whether that policy requires Phoenix to defend and indemnify Loring in the underlying personal injury action, in which the employee has sued Loring.

Before the Court are Loring's and Phoenix's cross-motions for summary judgment on whether Phoenix has a duty to defend and indemnify Loring in the underlying action.  For the reasons that follow, the Court denies Loring's motion for summary judgment, and it grants in part and denies in part Phoenix's cross-motion for summary judgment.

I.     **Background**

A.     **Factual Background**

The following facts are drawn from Loring's Local Rule 56.1 Statement (ECF No. 63 ("Loring SOF")), Phoenix's Rule 56.1 Statement (ECF No. 79 ("Phoenix SOF")), Phoenix's Counter Statement (ECF No. 80 ("Phoenix SOF Opp.")), Loring's Counter Statement (ECF

No. 86 ("Loring SOF Opp.")), and the evidence cited therein.  The facts recited here are undisputed unless otherwise noted.

This case involves an insurance coverage dispute related to an underlying personal injury action (the "underlying action"), brought in New York Supreme Court by John L. Reynoso ("Reynoso") against Loring, the owner of the premises where he was injured.  (*See* Loring SOF ¶ 3; Phoenix SOF ¶ 1.)  Reynoso testified in a deposition in the underlying action that he was a construction technician for internet service provider Starry, Inc. ("Starry") and that he spliced cables in conjunction with internet installations.  (Phoenix SOF ¶ 3.)  Reynoso sought to recover damages for injuries that he allegedly suffered on April 20, 2021 while working for Starry at a site owned by Loring in the Bronx.  (Phoenix SOF ¶ 2; Phoenix SOF Opp. ¶¶ 12, 14.)  Reynoso alleged that while he was working at that site, bricks, stone, cement, and/or other materials broke off and fell from a window ledge above and struck his body, causing severe and permanent personal injuries.  (Phoenix SOF ¶ 4; Phoenix SOF Opp. ¶ 13.)  The Starry Incident Report described the incident as follows:  "John [Reynoso] was on the ground feeding cat6 cables into the basement from the courtyard.  While standing next to exterior building wall, a brick fell off of buildings window frame and hit John on the shoulder."  (Phoenix SOF ¶ 5.)

Reynoso was working at Loring's premises pursuant to a contract that Starry had entered into with Loring and other property owners in February 2020 to make its internet services available to residents.  (Loring SOF ¶ 24.)  That contract requires Starry to "keep in full force and effect the following insurance coverage: (a) Commercial General Liability Insurance with limits of liability not less than $1,000,000.00 per occurrence and $2,000,000.00 annual aggregate," as well as "(b) an umbrella policy of not less than $5,000,000.00 per occurrence and annual aggregate."  (*Id.* ¶ 28.)  It also requires Starry to "indemnify, defend, and hold

harmless . . . each Owner and its affiliates . . . from and against any and all third-party claims, demands, suits, actions, proceedings, investigations, losses, damages, liabilities, judgments, costs, and expenses . . . that result from or arise out of . . . any damage to the real or personal property of, or any personal injury to, any third-party caused by Starry." (*Id.* ¶ 29.)  Finally, the agreement also required Starry to "further repair, at its sole cost and expense, any damage caused to the Property during Starry's installation, use, operation, maintenance, or removal of the System." (Phoenix SOF ¶ 9.)

Pursuant to that agreement, Starry provided Loring with a certificate of insurance that identified Phoenix as its commercial general liability insurer.  (Phoenix SOF Opp. ¶ 31.) Phoenix issued a general liability policy with liability limits of $1 million per occurrence and $2 million in the aggregate that named Starry as the insured.  (*Id.* ¶¶ 32-33; Phoenix SOF ¶ 11.) That policy provides:

> Any person or organization that you agree in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only . . . [i]f, and only to the extent that, such injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the written contract or agreement applies.  Such person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

(Loring SOF ¶ 35.)  The policy further provides:

> Any person or organization that is not otherwise an insured under this Coverage Part and that you have agreed in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to liability for "bodily injury" or "property damage" that . . . [o]ccurs subsequent to the signing of that contract or agreement; and . . . "[i]s caused, in whole or in part, by your acts or omissions in the performance of your ongoing operations to which that contract or agreement applies or the acts or omissions of any person or organization performing such operations on your behalf.

(*Id.* ¶ 36.)

In November 2021, counsel for Penn-Star Insurance Company ("Penn-Star"), which issued a policy to Loring, contacted Phoenix and indicated that it was providing a defense to Loring despite disclaiming coverage for the underlying action.  (*See* ECF No. 61-15; Loring SOF ¶ 51.)  Penn-Star's counsel represented that it was, on behalf of Loring, "seeking full defense, indemnity, and additional insured coverage" from Phoenix.  (ECF No. 61-15 at 3.)  Phoenix responded later that month, "formally denying [Penn-Star's] request for indemnification and insurance covering for Loring" and calling the tender "premature."  (ECF No. 61-16 at 2.)  The response stated that Reynoso "was doing wiring work[] at the referenced location when a brick came loose from the building, struck Mr. Reynoso and caused him injuries," that the "accident and injuries were due to a loose brick which is a structural issue and not the responsibility of Starry," and that Starry's insurance policy provides additional insured coverage "to the extent that such injury or damage is caused by acts or omissions of the insured or insureds subcontractors in the performance of their work."  (*Id.*)

**B.    Procedural History**

Plaintiff Penn-Star first brought this action against Defendants Loring, Reynoso, Starry, and YMY Acquisitions LLC on February 10, 2022.  (ECF No. 1.)  Penn-Star then filed amended complaints on February 28, 2022 (ECF No. 15) and February 28, 2023 (ECF No. 67), the latter of which added Phoenix as a defendant and serves as the operative complaint.  Penn-Star seeks damages and declaratory relief, including a declaration that it has no duty to defend or indemnify any party or pay any amounts with respect to the underlying action, as well as a declaration that Phoenix has a duty to defend and indemnify Loring as an additional insured as it relates to the underlying action.  (*See* ECF No. 67 at 20-21.)  Reynoso, Loring and YMY Acquisitions LLC,

and Starry filed answers on May 13, 2022, June 15, 2022, and September 14, 2022, respectively. (ECF Nos. 31, 36, and 49.)  In its answer, Starry also brought a cross-claim against Loring, Reynoso, and YMY Acquisitions LLC.  (ECF No. 49.)

On September 6, 2022, Defendant Loring filed a third-party complaint against Phoenix, seeking a declaration that Phoenix has a duty to defend and indemnify Loring in the underlying action as well as a judgment for amounts that it incurred and will incur in both that action and this suit.  (*See* ECF No. 45 at 10.)  Phoenix filed an answer to the third-party complaint on October 4, 2022.  (ECF No. 52.)

Defendant Loring filed a motion for summary judgment on February 3, 2023.  (ECF No. 60.)  Counsel for Starry informed the Court that Starry had filed a petition for bankruptcy in February 2023, and the Court granted a letter motion filed by Loring to stay the case.  (ECF Nos. 66, 68, 69.)  The Court was then informed that Starry's plan of reorganization became effective in August 2023 and that the stay of pending actions against it had been lifted.  (*See* ECF Nos. 72, 75.)  The Court then lifted the stay of this case (ECF No. 76), and Phoenix filed a cross-motion for summary judgment on December 29, 2023 (ECF No. 77).  On January 31, 2024, Loring filed an opposition to Phoenix's cross-motion and a reply in support of its own motion for summary judgment (ECF No. 84), and on February 7, 2024, Phoenix filed a reply in support of its cross-motion for summary judgment (ECF No. 87).

## II.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party.  *Ricci v. DeStefano*, 557

U.S. 557, 586 (2009).  In deciding a motion for summary judgment, a court must consider the

evidence "in the light most favorable to the non-moving party and draw all reasonable inferences

in its favor."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995).  In cases involving cross-motions

for summary judgment, such as this case, "the court must evaluate each party's motion on its

own merits, taking care in each instance to draw all reasonable inferences against the party

whose motion is under consideration."  *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d

Cir. 2017) (quoting *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).  "[T]he

trial court's task at the summary judgment motion stage of the litigation is carefully limited to

discerning whether there are any genuine issues of material fact to be tried, not to deciding

them."  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Insurance policies are interpreted "like any ordinary contract," *Utica Mut. Ins. Co. v.

Munich Reins. Am., Inc.*, 7 F.4th 50, 56 (2d Cir. 2021) (internal quotation marks and citation

omitted), and "[s]ummary judgment on a contract interpretation dispute is clearly permissible

when the language of the contract provision in question is unambiguous," *Nycal Corp. v. Inoco

PLC*, 988 F. Supp. 296, 298 (S.D.N.Y. 1997).  "[I]f the court finds that the contract is not

ambiguous," it "should assign the plain and ordinary meaning to each term and interpret the

contract without the aid of extrinsic evidence," and "it may then award summary judgment."

*Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal quotation

marks and citation omitted).

## III.   Discussion

Loring and Phoenix both seek summary judgment on the issue of whether Phoenix has a

duty to defend and a duty to indemnify Loring in the underlying litigation.  The Court first

determines that Phoenix has no duty to defend, as the materials in the underlying action do not

suggest that the action triggers additional insured coverage under Starry's policy.  The Court also

rejects Loring's argument that Phoenix's denial of coverage is subject to the timeliness requirements of Insurance Law Section 3420(d)(2). Although the Court resolves whether Phoenix has a duty to defend, it declines to resolve whether Phoenix has a duty to indemnify, as the resolution of that issue is premature.

### A.    Duty to Defend

Under New York law, "an insurer's duty to defend is exceedingly broad and distinct from the duty to indemnify." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (internal quotation marks and citation omitted). "The duty to defend is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person." *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985).

To determine whether a duty to defend exists, courts "compare the allegations of the complaint to the terms of the policy." *A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp.*, 74 N.Y.2d 298, 302 (1989). Courts may also consider other formal submissions, such as responsive pleadings and discovery. *Spandex House, Inc. v. Hartford Fire Ins. Co.*, 407 F. Supp. 3d 242, 250 (S.D.N.Y. 2019). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. 2006) (internal quotation marks and citation omitted). Conversely, "a defense obligation may be avoided" if there is "'no possible factual or legal basis' on which an insurer's duty to indemnify under any provision of the policy could be held to attach." *Id.* (quoting *Servidone*, 64 N.Y.2d at 424). "The policyholder bears the initial burden of showing that the insurance policy covers the claims at issue." *Spandex House*, 407 F. Supp. 3d at 250.

The Court concludes that Phoenix does not have a duty to defend in the underlying action because the relevant filings in that action do not suggest any basis for coverage.  "The language in [Phoenix's] policy governing coverage for additional insureds is common in the field," and "its meaning is now well settled as a matter of New York law."  *Ohio Sec. Ins. Co. v. Travelers Indem. Co. of Conn.*, No. 19-CV-1355, 2021 WL 797670, at *3 (S.D.N.Y. Mar. 1, 2021) (Nathan, J.).  "When an insurance policy extends coverage to additional insureds only for injuries 'caused, in whole or in part, by the acts or omissions of the named insured, the coverage applies to injury proximately caused by the named insured.'"  *Id.* (quoting *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 317 (2017)).  As a result, "an obligation to indemnify does not attach if a named insured's innocent conduct is merely a but-for cause of the injury," and policies like the one here "do not cover claims based on an additional insured's own tortious conduct."  *Id.*

Under that principle, Phoenix has no duty to defend.  "New York courts have generally held that additional-insured provisions do not cover claims by an employee of the named insured for an injury caused by a dangerous condition on premises controlled by an additional insured"— which describes the situation at issue here.  *Id.* (citing cases).  Here, there are no facts pleaded in the underlying action suggesting that Reynoso's injury was "caused, in whole or in part, by [the] acts or omissions" of the named insured, Starry.  (Loring SOF ¶ 36; *see also* Loring SOF ¶ 35 (providing coverage to additional insureds only if "such injury or damage is caused by acts or omissions of you or your subcontractor").)  To the contrary, Reynoso alleged in the underlying action that while he was working at the site, "bricks, stones, cement and/or other materials broke off and fell from a window ledge above and struck" him.  (ECF No. 67-1 ¶ 17; *see* Phoenix SOF Opp. ¶ 13; Loring SOF Opp. ¶ 4.)  Starry's incident report states that Reynoso was "on the

ground feeding cat6 cables into the basement from the courtyard" and, while "standing next to

exterior building wall, a brick fell off of buildings window frame and hit" him. (ECF No. 78-3 at

10.) Those allegations all suggest that the injury was a result of the acts or omissions of Loring,

which was responsible as the premises owner for the condition of the property. Nothing in the

allegations or other relevant materials below suggest that Starry's actions caused the material to

fall from above and strike Reynoso.

Courts confronted with similar facts have consistently concluded that the insurer has no

duty to defend the additional insured. For example, one court concluded that a policy held by an

HVAC company, which contained similar relevant language and named a construction manager

as an additional insured, did not trigger a duty to defend where the underlying suit was based on

the employee's injury from having "struck his head on a low hanging beam/structure and fell

down a stairwell." *N.Y. Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 632 F.

Supp. 3d 303, 305, 308 (S.D.N.Y. 2022) (internal quotation marks and citation omitted). The

court explained that the employee did not allege that the HVAC company was responsible for

that low-hanging beam, "[n]or could he, as [the employer] was responsible solely for HVAC

work on the Project and not for maintaining the workspace or any other construction being

done." *Id.*; *see also Ohio Sec.*, 2021 WL 797670, at *4 (no duty to defend in a similar case

where there was "no genuine dispute that [the employer-policyholder]—an HVAC

subcontractor—did not own, manage, maintain, control, or supervise the premises").

In another case, a court concluded that a similar policy held by a security corporation that

named a music school as an additional insured did not require defense of a suit based on an

employee's having "slipped and fell on a recently mopped floor while working at the [school]"

because the security corporation's conduct was not the "proximate cause of the security guard's

injury." *Hanover Ins. Co. v. Phila. Indem. Ins. Co.*, 73 N.Y.S.3d 549, 587-88 (1st Dep't 2018).

And in yet another case, a policy held by a janitorial services company that included similar language and named a school as an additional insured did not trigger coverage where a janitorial employee sued the school after she "slipped on snow or ice in the parking lot" of the school.

*Pioneer Cent. Sch. Dist. v. Preferred Mut. Ins. Co.*, 86 N.Y.S.3d 364, 365-66 (4th Dep't 2018).

The court reached that conclusion because the janitorial services company "was not responsible for clearing ice and snow from the parking lot," meaning the injury was not a result of the company's acts or omissions. *Id.* at 366.

So, too, here, as nothing in the allegations suggest that Reynoso's injury was the proximate cause of Starry's acts or omissions. Instead, it appears that the bricks and material that injured Reynoso fell as a result of Loring's actions, as Loring was the owner responsible for the condition of the premises. Nor does it matter that Reynoso was present at the work site because he was working for Starry. Starry "merely furnished the occasion for the injury" by "fortuitously plac[ing]" Reynoso "in a location or position in which . . . [an alleged] separate instance of negligence acted independently upon [him] to produce harm," and such happenstance does not render Starry the proximate cause of Reynoso's injury. *Id.* (quoting *Hain v. Jamison*, 28 N.Y.3d 524, 531, 532 (2016)).

Loring attempts to avoid that conclusion by contending that there is a possibility that Starry's own conduct caused Reynoso's injury—for example, if the movement of Starry's cables dislodged the bricks or materials that fell and injured Reynoso, or if the injury occurred because Starry failed to take certain necessary precautions. (ECF No. 62 at 11.) But Loring cites no allegations or facts whatsoever in the underlying proceeding that would suggest such a theory, and a party cannot "float[] fanciful theories for how [the policyholder] could conceivably have

caused [the] accident." *N.Y. Marine*, 632 F. Supp. 3d at 308.  If Loring's proposed theories

about how Starry might have caused the accident are "not rooted in the Underlying Complaint or

elsewhere in the record," those theories "do not trigger a duty to defend."  *Id.*; *see also Spandex*

*House*, 407 F. Supp. 3d at 249 ("[U]nsubstantiated speculation about facts that may be alleged or

adduced in the underlying litigation does not trigger a duty to defend." (internal quotation marks

and citation omitted)).[1]

    Critically, the parties' own conduct suggests that the injury was not a proximate result of

Starry's actions.  The contract between Starry and Loring states that "Starry will further repair, at

its sole cost and expense, any damage caused to the Property during Starry's installation, use,

operation, maintenance, or removal of the System."  (Phoenix SOF ¶ 9.)  But Starry was never

asked to repair or pay for any damage to the premises, further suggesting that the dislodging of

bricks or other materials that injured Reynoso was not caused by Starry's actions—if that were

---

[1] The existence of a third-party complaint by the additional insured against the named insured in the underlying action may suggest that the named insured's acts or omissions proximately caused the injury giving rise to the suit.  *See Sw. Marine & Gen. Ins. Co. v. United Specialty Ins. Co.*, No. 19-CV-8857, 2022 WL 3904096, at *2 (S.D.N.Y. Aug. 30, 2022).  Here, Loring filed a third-party complaint against Starry in the underlying action.  (*See* ECF No. 61-8.)

Still, although that third-party complaint alleges that Reynoso's injuries were "brought about and sustained by reason of the carelessness, recklessness, negligence and/or acts or omission or commission by third-party defendant, STARRY, INC." (*id.* ¶ 12), it is devoid of any factual allegations to support that conclusory assertion.  And a court determining whether the duty to defend exists must "'depend[] on the facts which are pleaded' in the litigation, not on 'conclusory assertions' in the complaint or other documents."  *Spandex House*, 407 F. Supp. 3d at 250 (quoting *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162 (1992)).

Thus, even if there is a claim seeking to hold Starry liable as part of the proximate cause for Reynoso's injuries, a court can, "even at the summary judgment stage . . . peel back the allegations to determine whether [the insured] was actually a proximate cause as alleged in the pleadings."  *LM Ins. Co. v. Fed. Ins. Co.*, 585 F. Supp. 3d 493, 501 (S.D.N.Y. 2022).  Here, because there are no facts suggesting that Starry was a proximate cause of Reynoso's injury, the existence of that third-party complaint does not alter the Court's conclusion in this case.

not the case, Starry likely would have been asked to repair that damage pursuant to its contract with Loring.[2]

The Court therefore denies Loring's motion for summary judgment and grants Phoenix's cross-motion for summary judgment on the issue of whether Phoenix has a duty to defend Loring in the underlying action.

### B.   Timeliness of Coverage Disclaimer

Loring also contends that Phoenix did not disclaim the relevant coverage in a timely fashion as required by Insurance Law Section 3420(d)(2).  "Under New York law, 'in cases involving death and bodily injury claims arising out of a New York accident and brought under a New York liability policy,' Section 3420(d)(2) requires the insurer to provide a timely disclaimer for denials of coverage."  *Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 404 (S.D.N.Y. 2015) (quoting *KeySpan Gas E. Corp. v. Munich Reins. Am., Inc.*, 23 N.Y.3d 583, 590 (2014)).  If a disclaimer is based on a policy exclusion, failure to provide a timely disclaimer under Section 3420(d) precludes denial of coverage.  *Britt v. Gen. Star Indem. Co.*, 494 F. App'x 151, 152-53 (2d Cir. 2012) (summary order).

"Disclaimer pursuant to section 3420(d) is unnecessary," however, "when a claim falls outside the scope of the policy's coverage portion."  *Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 188 (2000).  "Under those circumstances, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim

---

[2] Loring lodges a boilerplate denial of the fact that Starry was never asked to repair or pay for any repairs at the site where Reynoso was injured.  (Loring SOF Opp. ¶ 10.)  But Loring provides no evidence for that denial, and Phoenix cannot be expected to provide evidence of the lack of any such request.  Loring "must do more than simply show that there is some metaphysical doubt" as to Phoenix's statement of fact, but it fails to make more than a "bald assertion, completely unsupported by evidence," that no such request was ever made.  *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (internal quotation marks and citation omitted).

would create coverage where it never existed." *Id.* Thus, a provision that is a "fundamental grant of Policy coverage, not an exclusion," is not subject to the timeliness requirements of Section 3420(d). *Britt*, 494 F. App'x at 153. To be sure, "drawing the line between a lack of coverage in the first instance (requiring no disclaimer) and a lack of coverage based on an exclusion (requiring timely disclaimer) has at times proved problematic," and "[b]oth are situations where there is no coverage." *Worcester*, 95 N.Y.2d at 189. But if the relevant policy "states the activities that are covered," it cannot "cover liability arising out of the non-covered activity under any circumstances" and therefore is not subject to Section 3420(d)'s requirements. *Netherlands Ins. Co. v. United Specialty Ins. Co.*, 276 F. Supp. 3d 94, 109 (S.D.N.Y. 2017).

Here, because Phoenix's denial of coverage was premised upon a determination that Loring fell outside the initial scope of coverage, that denial is not subject to Section 3420(d)'s timeliness requirements. *See, e.g.*, *Max Specialty Ins. Co. v. WSG Invs., LLC*, No. 09-CV-5237, 2012 WL 3150577, at *3 (E.D.N.Y. Aug. 2, 2012) (holding that denial under a provision that "limits the policy's coverage to the two categories listed in the declarations page . . . did not create an exclusion" because it "merely describes the scope of the policy's coverage"). The relevant portions of the policy address the circumstances of inclusion rather than exclusion, as they state that specific activities that are covered if they meet certain criteria. (*See* Loring SOF ¶¶ 35-36.) For example, one of the relevant provisions confers coverage upon "[a]ny person or organization that you agree . . . to include as an additional insured on this Coverage Part is an insured, but only . . . [i]f, and only to the extent that," certain criteria are met. (*Id.* ¶ 35.) And another provision confers coverage upon an additional insured but clarifies that it does so "only with respect to liability" that occurs pursuant to certain conditions. (*Id.* ¶ 36.) Because Phoenix's denial of coverage is based not on an exclusion but on the scope of coverage in the

first instance, Section 3420(d)'s timeliness requirements do not apply, and the Court denies
Loring's motion for summary judgment on this issue.

## C.  Duty to Indemnify

The Court now turns to Phoenix's duty to indemnify, which is distinct from its duty to
defend.  "Because the duty to defend is triggered by the filing of a lawsuit while the duty to
indemnify is triggered by a determination of liability, a district court's jurisdiction to declare an
insurer's duty to defend and its duty to indemnify turn on different inquiries." *Admiral Ins. Co.
v. Niagara Transformer Corp.*, 57 F.4th 85, 93 (2d Cir. 2023) (internal quotation marks and
citation omitted).  "Accordingly, a district may well have jurisdiction to issue a declaratory
judgment on [an insurer's] duty to defend, even while holding that the duty to indemnify is not
ripe for adjudication." *Id.* (internal quotation marks and citation omitted).

The Court adopts that approach and concludes that while Phoenix does not have a duty to
defend, it is appropriate to defer a decision on its duty to indemnify as not yet ripe for review.
Although an insurer's duty to defend is generally understood as being broader than its duty to
indemnify, in this case, "the Court must await resolution of factual disputes in the Underlying
Action" to determine whether Phoenix has a duty to indemnify in this case. *Mt. Vernon Fire Ins.
Co. v. Munoz Trucking Corp.*, 213 F. Supp. 3d 594, 604 (S.D.N.Y. 2016) (concluding that there
was no duty to defend but that the issue of the duty to indemnify was "not yet ripe for review");
*see Lafarge Can. Inc. v. Am. Home Assurance Co.*, No. 15-CV-8957, 2018 WL 1634135, at *5
(S.D.N.Y. Mar. 31, 2018) ("[C]ourts regularly require the existence of liability before
exercising . . . discretion over indemnity issues.").  In this case, the allegations in the underlying
complaint are broad, and the Court does not preclude at this point the possibility that although no
such facts were pleaded, further discovery might uncover evidence that Reynoso's injury was

somehow the proximate cause of Starry's actions.  *See Am. Auto. Ins. Co. v. Sec. Income Planners & Co.*, 847 F. Supp. 2d 454, 465 (E.D.N.Y. 2012) (the issue of duty to indemnify is premature when liability in the underlying action "hinges on facts that have not yet been determined").  Thus, when it is difficult to separate the issue of the duty to indemnify from "the issues of liability and causation that are being litigated in the underlying lawsuit," there is "reason to withhold judgment on the question of indemnification."  *See Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 261 (S.D.N.Y. 2013).

Accordingly, the Court denies summary judgment to Loring and Phoenix on the issue of Phoenix's duty to indemnify Loring without prejudice to renewal by either party upon the further progress in the underlying action.

## IV.     Conclusion

For the foregoing reasons, Loring's motion for summary judgment is denied and Phoenix's cross-motion for summary judgment is granted in part and denied in part.

The parties are directed to file a joint status letter within 21 days of the issuance of this Opinion and Order addressing whether, given the Court's determination that the issue of the duty to indemnify is not yet ripe, there is any reason this case should not be closed and the remaining claims dismissed without prejudice to refiling any claims relating to indemnification.

The Clerk of Court is directed to close the motions at ECF Numbers 60 and 77.

SO ORDERED.

Dated:  March 25, 2024
        New York, New York

_____
J. PAUL OETKEN
United States District Judge

15